UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DIANE COPELAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.   4:12CV269 TIA |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration.  The

suit involves Applications for Disability Insurance Benefits under Title II of the Social Security

Act and for Supplemental Security Income under Title XVI of the Act.  Claimant has filed a Brief

in Support of his Complaint, and the Commissioner has filed a Brief in Support of her Answer.

The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**I.      Procedural History**

On April 30, 2009, Claimant Diane Lynn Copeland filed Applications for Disability

Insurance Benefits under Title II of the Act, 42 U.S.C. §§ 401 et. seq. (Tr. 102-09) and for

Supplemental Security Income payments pursuant to Title XVI of the Social Security Act, 42

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is therefore substituted for Michael J. Astrue as the Defendant in this action.

U.S.C. §§ 1381, et. seq.  (Tr. 110-13).[2]  Claimant states that her disability began on April 17,

2009, as a result of rheumatoid arthritis, right hand injury, back problems, and panic attacks.  (Tr.

59, 132).  On initial consideration, the Social Security Administration denied Claimant's claims for

benefits.  (Tr. 59).  Claimant requested a hearing before an Administrative Law Judge ("ALJ").

(Tr. 64-65).  On May 4, 2010, a hearing was held before an ALJ.  (Tr. 29-55).  Claimant testified

and was represented by counsel.  (Id.).  Thereafter, on November 15, 2010, the ALJ issued a

decision denying Claimant's claims for benefits.  (Tr. 10-24).  After considering the letter from

counsel and additional medical records from Missouri Baptist Sullivan Hospital, the Appeals

Council on January 4, 2012 found no basis for changing the ALJ's decision and denied Claimant's

request for review of the ALJ's decision.  (Tr. 1-6, 97, 197-98, 277-85).  The ALJ's determination

thus stands as the final decision of the Commissioner.  42 U.S.C. § 405(g).

## II.    Evidence Before the ALJ

### A.  Hearing on May 4, 2010

#### 1.  Claimant's Testimony

At the hearing on May 4, 2010, Claimant testified in response to questions posed

by the ALJ.  (Tr. 29-55).  Claimant's date of birth is December 28, 1958, and at the time of the

hearing, she was fifty-one years of age at the time of the hearing.  (Tr. 35).  Claimant is separated

and lives with her seventeen year old daughter.  (Tr. 35).  She completed the ten grade.  (Tr. 35).

Claimant has filed for divorce from her husband who is about to be released from prison after

serving time for meth.  (Tr. 36-37).  Claimant stands at five feet six inches and weighs

---

[2]"Tr." refers to the page of the administrative record filed by the Defendant with her Answer
(Docket No. 13/filed April 20, 2012).

approximately 140 plus pounds.  (Tr. 40).  Claimant is right-handed.  Claimant receives $526 in food stamps each month.  (Tr. 41).  Claimant lives in HUD housing so she does not have to pay rent.  (Tr. 42).  Claimant has been married three times.  (Tr. 42).  Claimant has three sons and one daughter.  (Tr.43).

Claimant testified that she has fallen several times, and she crushed her right hand.  (Tr. 39).  Claimant reinjured her hand when she attempted to break up a fight, and she was kicked in the hand.  As a result, some of the hardware in her hand had to be removed in May 2009.  (Tr. 39).  Claimant testified that she has arthritis all over her body.  (Tr. 40).

Claimant served a one-month jail sentence for selling marijuana to an undercover state patrol officer.  (Tr. 40).  Claimant entered a guilty plea to a Class C felony of possession of marijuana.  (Tr. 41).  Claimant testified that her probation ends on July 4.  (Tr.41).

Claimant testified that she has never had a sit down job where you work at a desk.  (Tr. 43).  At the hospital, Claimant worked in the engineering department and took care of flowers, put up towel racks, and hung pictures.  (Tr. 44).  Claimant did CNA work at the nursing home. Her job at the glass factory required lifting heavy windows.  (Tr. 44).

Claimant testified that she receives Medicaid.  (Tr. 44).  Dr. Barbin is her treating physician.  (Tr. 44).  Claimant testified Dr. Barbin diagnosed her with bipolar in her first visit. (Tr. 45, 49).  Claimant testified she smokes, but her doctor advised her to stop because the doctor thinks she had COPD.  (Tr. 45).  Claimant testified that she has not smoked marijuana since being on probation.  (Tr. 46).

Claimant met her boyfriend in the probation office and has dated him for three years.  (Tr. 50-51).

- 3 -

### 2.  Forms Completed by Claimant

In the Disability Report - Adult, Claimant reported she stopped working when she was fired from Paramount Hardware on March 6, 2009 and could not find another job.  (Tr. 133).

In the Function Report - Adult, Claimant noted her daily activities to include taking care of an elderly woman, going shopping for the woman several times a day, taking care of the basic essentials, and picking up her boyfriend from work.  (Tr. 149).  Claimant reported seeing doctors for anxiety attacks for fifteen years.  (Tr. 156).

## III.    Medical Records

On October 4, 2006, Claimant reported having a stroke at age twenty and experiencing low back pain and persistent pain in right hand.  (Tr. 213).  The doctor at St. John's Mercy Hospital prescribed medications as treatment.  (Tr. 213).

The October 20, 2006 lumbar spine x-ray showed straightening and loss of normal lordotic curvature, and minimal degenerative facet changes of lower lumbar spine.  (Tr. 199). The x-ray of her right hand showed findings consistent with prior open reduction internal fixation of fractures of third and fourth metacarpals and mild bony osteopenia.  (Tr. 200).

In follow-up treatment on January 25, 2007, Claimant reported having interpersonal difficulties with boyfriend including verbal abuse by him.  (Tr. 214).

On February 12, 2007, a doctor at St. John's Mercy Hospital prescribe an Albuterol Inhaler.  (Tr. 215).

On January 17, 2008, Claimant reported smoking cigarettes each day during treatment at St. John's Mercy Hospital.  (Tr. 217).

- 4 -

On July 30, 2007, Claimant reported being unable to sleep, because a friend was killed by her estranged husband.  (Tr. 218).  The doctor diagnosed Claimant with situational stress and prescribed medications.  (Tr. 218).

On May 14, 2008, Claimant sought treatment at St. John's Mercy Hospital after lacerating her left finger while cutting deer meat.  (Tr. 220).

On August 21, 2008, Claimant reported injuring left elbow after lifting heavy boxes at work.  (Tr. 222).  She was out of medications and still smoked.  (Tr. 222).

During a follow-up visit at St. John's Mercy Hospital, Claimant reported having a grinding sensation in her right hand.  (Tr. 224).  On May 13, 2009, Claimant reported trying to protect a friend from a fight in April.  (Tr. 225).

On May, 2009, Dr. Benjamin Verdine evaluated Claimant on referral.  (Tr. 203). Claimant reported symptomatic right middle and ring finger hardware complications stemming from 2002 open reduction internal fixation of metacarpal fractures.  She reported doing well postoperatively but then starting to having pain and clicking over the plates.  Further radiographs showed questionable loosening of her hardware.  Examination showed with flexion and extension palpable clicking and triggering of the exterior tendons over the plate.  (Tr. 203).  Dr. Verdine noted flexor digitorum, superficialis, and profundus tendons to be intact to each digit as is extensor mechanism.  (Tr. 204).  He observed Claimant to be able to make a fist and extend completely. Review of radiographs showed good healing of fractures and a small lucency at the base of her ring finger metacarpal.  After discussing options, Claimant elected to have a lose screw removed. (Tr. 204).  On May 22, 2009, Dr. Verdine removed right middle metacarpal hardware and right ring metacarpal hardware.  (Tr. 206).

- 5 -

On August 3, 2009, Dr. Charles Mannis completed an orthopedic evaluation of Claimant on referral by disability determinations.  (Tr. 226).  Claimant reported having a stroke at age twenty and occasionally falling or tripping, because she drags her right foot.  Claimant reported limited function of her right hand with limited ability to grip with any strength.  She does home exercises, but she has not attended formal physical therapy.  Claimant reported having rheumatoid arthritis, but has never seen a rheumatologist.  (Tr. 226).  Dr. Mannis noted that it was unclear whether this diagnosis has been confirmed by laboratory data.  (Tr . 227).  Claimant takes only Aleve for her arthritis.  She can do some cooking and some grocery shopping.  Dr. Mannis observed Claimant to have a normal gait and no limp or list to be noted.  Examination showed no abnormalities of cervical or lumbar spine.  Examination of right hand showed bony thickening and prominence over the dorsum of the third and fourth metacarpals and moderate tenderness and some soft tissue swelling in area of incision.  Dr. Mannis noted some slight restriction of motion of the metacarpal joint and the proximal interphalangeal joint of the third finger.  He observed that Claimant is able to make a fist but she has limited ability to completely flex the third and fourth fingers while doing so.  (Tr. 227).  Her grip strength is slightly decreased in the right hand as compared to the left hand.  (Tr. 228).  Examination of lower back and lower extremities was unremarkable.  Dr. Mannis observed Claimant to be able to move without difficulty during the examination from one position to another, and her gait pattern to be normal.  Dr. Mannis opined that Claimant would have some restriction in using her right hand for fine maneuvering on a repetitive basis and for gripping on a regular basis and found no other restrictions to be necessary. (Tr. 228).

Dr. L. Lynn Mades completed a psychological evaluation on August 3, 2009 on referral by disability determinations.  (Tr. 232).  Claimant reported last working in March as a factory worker.  Her chief complaints included rheumatoid arthritis, right hand injury, back problems, and panic attacks.  Claimant reported a history of self-injurious behavior, anxiety, and depression. (Tr. 232).  Claimant used cocaine and marijuana and last used marijuana one month earlier.  (Tr. 233).  Dr. Mades opined that "[i]t is not known if she is a reliable informant regarding substance use, as she appeared to have been using a considerable amount of Xanax and pain medication from her physician's notes."  (Tr. 233).  Claimant reported having a brain aneurysm and taking no medications, because her doctor was being investigated for overprescribing.  (Tr. 233).  Claimant is on probation after being arrested for the sale of marijuana to an undercover officer in 2006. (Tr. 234).  Dr. Mades found Claimant's cooperation during the examination to be fair.  (Tr. 234). Dr. Mades observed Claimant to be well-groomed female with blonde highlights.  (Tr. 234). Claimant reported her activities of daily living to include taking care of the household chores, driving others to work, and watching television.  (Tr. 235).  Dr. Mades diagnosed Claimant with mild psychological and environmental problems and assessed her GAF to be 75.  (Tr. 236).  Dr. Mades noted that although Claimant reported symptoms consistent with anxiety and depression, she did not appear at all anxious or depressed during the evaluation.  Dr. Mades opined it was unclear to what extent her substance use contributes to her reported mood problems, and appeared to  minimize her substance abuse.  Dr. Mades found her prognosis to be fair with appropriated intervention and abstinence from substance use.  (Tr. 236).

In the Physical Residual Functional Capacity Assessment dated August 27, 2009, Dr. Terry Dunn listed previous fracture of right third and fourth metacarpal as Claimant's primary diagnosis and mild degenerative disc disease of the lower spine as Claimant's secondary diagnosis. (Tr. 238). She found Claimant could occasionally lift twenty pounds and frequently lift ten pounds; stand and/or walk at least six hours in an eight-hour workday; sit about six hours in an eight-hour workday; and unlimited ability to push and/or pull other than shown for lift and/or carry. (Tr. 239). Dr. Dunn noted that given the limitations with grasping, lifting heavier weights had been limited. (Tr. 239). With respect to postural limitations, she found none established. (Tr. 241). She found Claimant limited in her ability to handle (gross manipulation) and finger (fine manipulation). Dr. Dunn found Claimant capable of occasional fine fingering and gripping of her right hand, just not repetitively or constant. (Tr. 241). She found no visual, communicative, or environmental limitations to be established. (Tr. 241-42). In support, Dr. Dunn noted during consultative examination, no abnormal findings of her lower spine were noted. (Tr. 260). She further found that overall examining sources indicate Claimant would have some limitations with her right hand for fine maneuvering on a repetitive basis and for gripping on a regular basis. Claimant is able to drive, does shopping for an elderly woman she takes care of several times a day, picks up her boyfriend from work, and visits others. (Tr. 243).

In the Psychiatric Review Technique completed by Dr. Dunn on August 27, 2009, she found Claimant impairments, affective disorders and substance abuse disorders, not to be severe. (Tr. 245-52). Dr. Dunn found Claimant to have mild functional limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. 253). Dr. Dunn noted Claimant has a history of anxiety and treatment with Xanax dating back to

1998.  (Tr. 255).  In support, Dr. Dunn noted during the August 3, 2009, psychiatric consultative examination, Claimant reported not receiving current psychiatric treatment or medications.  Dr. Dunn found the medical evidence does not support a severe mental impairment that would prevent Claimant from performing work activities, and Claimant to be partially credible.  (Tr. 255).

On November 19, 2009, Claimant reported lower back pain starting a month earlier after a fall.  (Tr. 256).  She has problems with her nerves caused by relationship problems and aggravated by conflict or stress at home or work.  Claimant reported having been on Xanax for eighteen years and symptoms of major depressive episode.  Claimant smokes one package of cigarettes each day.  (Tr. 256).  Examination showed no abnormality of her back/spine, and spine positive for posterior tenderness.  (Tr. 258).  Dr. Jennifer Barbin observed her affect to be normal and her attention span and concentration to be normal.  Dr. Barbin prescribed lamictal for her bipolar 2 disorder and physical therapy for her back pain.  (Tr. 258).

In follow-up treatment on December 3, 2009, Claimant reported taking her medication makes her calmer and doing much better and having no side effects.  (Tr. 260).  Dr. Barbin noted Claimant doing well and having an improved mood and continued her medication regimen.  (Tr. 261).  On December 29, 2009, Claimant reported having insomnia and pain in her back and legs.  (Tr. 263).  Dr. Barbin found Claimant's bipolar 2 disorder to be controlled by the medications.  (Tr. 263).  Dr. Barbin in a follow-up visit noted the status of Claimant's bipolar 2 disorder to be controlled, and she is taking medications regularly.  (Tr. 264).  Examination showed tenderness in her spine and a full range of motion of her cervical spine.  Claimant had right hand tenderness

and mild pain with motion.  Dr. Barbin listed her bipolar 2 disorder as controlled and added robaxin to her medication regimen.  (Tr. 264).

On April 13, 2010, Claimant reported her husband's release from prison causing her anxiety since she just filed for divorce.  (Tr. 266).  Dr. Barbin increased her lamictal dosage and prescribed vistaril for anxiety.  (Tr. 267).

On July 1, 2010, Dr. Joseph Long, a clinical psychologist, completed a psychological evaluation on referral by disability determinations.  (Tr. 274).  Dr. Long observed Claimant to walk with a normal gait.  (Tr. 274).  Claimant noted she thought for years she might have bipolar disorder and ADHD.  (Tr. 275).  Claimant reported having panic attacks for fifteen years caused by living in the chaos of a meth house.  Claimant admitted to using marijuana in a very minor way and receiving a misdemeanor possession conviction three years earlier.  Claimant denied any history of formal mental health treatment and noted six months earlier, "her family physician suggested she might have Bipolar Disorder."  (Tr. 275).  Dr. Long noted in the impression that Claimant presented with the following diagnostic picture: personality disorder and ADHD, panic disorder, marijuana abuse in reported remission, and probable learning disorders.  (Tr. 276).

In the July 2, 2010 Medical Assessment of Ability to Do Work-Related Activities, Dr. Joseph Long, a clinical psychologist, found Claimant's ability to understand, remember and carry out instructions affected by her impairment.  (Tr. 270).  He found Claimant to be moderately impaired in carrying out complex instructions, making judgments on complex work-related decisions, and understanding and remember complex instructions.  Dr. Long opined her educational history strongly indicates underlying attention disorder and diagnosis of ADHD.  (Tr. 270).  Dr. Long found Claimant to be marked in her ability to respond appropriately to work

situations and to changes in routine and moderated in her ability to interact with the public, and interact appropriately with supervisors and coworkers. (Tr. 271). Dr. Long noted that Claimant admits to minor marijuana use but she claims to be totally drug free so he opined her psychological difficulties to be unrelated to substance abuse. (Tr. 271).

On December 31, 2010, Claimant received treatment in the emergency room at Missouri Baptist Sullivan Hospital for a scalp contusion caused by a fall. (Tr. 281, 283).

## IV.    The ALJ's Decision

The ALJ found that Claimant meets the insured status requirements of the Social Security Act through March 31, 2014. (Tr. 16). Claimant has not engaged in substantial gainful activity since April 17, 2009, the alleged onset date. (Tr. 16). The ALJ found that the medical evidence establishes that Claimant had the following severe impairments: status post internal fixation of fractures and hardware removal at the third and fourth metacarpals; mild bony osteopenia of the right hand and degenerative disc disease, but no impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 16-17). The ALJ opined that Claimant has the residual functional capacity to perform the full range of light work. (Tr. 17). The ALJ found that Claimant can occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; can sit for six hours in an eight-hour workday; stand/walk six hours in an eight-hour workday; occasionally stoop and crouch; and push/pull consistent with her lifting limitations. (Tr. 17). The ALJ found that Claimant is unable to perform any past relevant work. (Tr. 22).

The ALJ found Claimant was born on December 21, 1958, and was fifty years old which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

(Tr.23).  The ALJ noted Claimant has a limited education and is able to communicate in English. The ALJ noted that the transferability of job skills is not an issue because using the Medical-Vocational Rules supports a finding that Claimant is not disabled whether or not Claimant has transferable job skills.  Considering Claimant's age, education, work experience, and residual functional capacity, the ALJ opined there are jobs that exist in significant numbers in the national economy that Claimant can perform.  The ALJ concluded that Claimant was not been under a disability from April 17, 2009, through the date of this decision.  (Tr. 23).

**V.     Discussion**

In a  disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled.  First, the ALJ must determine whether the individual is engaged in "substantial gainful activity."  If she is, then she is not eligible for

disability benefits.  20 C.F.R. § 404. 1520(b).  If she is not, the ALJ must consider step two which

asks whether the individual has a "severe impairment" that "significantly limits [the claimant's]

physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the claimant is

not found to have a severe impairment, she is not eligible for disability benefits.  If the claimant is

found to have a severe impairment the ALJ proceeds to step three in which he must determine

whether the impairment meets or is equal to one determined by the Commissioner to be

conclusively disabling.  If the impairment is specifically listed or is equal to a listed impairment,

the claimant will be found disabled.  20 C.F.R. § 404.1520(d).  If the impairment is not listed or is

not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the

claimant is capable of doing past relevant work.  If the claimant can still perform past work, she is

not disabled.  20 C.F.R. § 404.1520(e).  If the claimant cannot perform past work, the ALJ

proceeds to step five in which the ALJ determines whether the claimant is capable of performing

other work in the national economy.  In step five, the ALJ must consider the claimant's "age,

education, and past work experience."  Only if a claimant is found incapable of performing other

work in the national economy will she be found disabled.  20 C.F.R. § 404.1520(f); see also

Bowen, 482 U.S. at 140-41 (explaining five-step process).

     Court review of an ALJ's disability determination is narrow; the ALJ's findings will be

affirmed if they are supported by "substantial evidence on the record as a whole."  Pearsall, 274

F.3d at 1217.  Substantial evidence has been defined as "less than a preponderance, but enough

that a reasonable mind might accept it as adequate to support a decision."  Id.  The court's review

"is more than an examination of the record for the existence of substantial evidence in support of

the Commissioner's decision, we also take into account whatever in the record fairly detracts

from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1.      The credibility findings made by the ALJ.

2.      The claimant's vocational factors.

3.      The medical evidence from treating and consulting physicians.

4.      The claimant's subjective complaints relating to
         exertional and non-exertional activities and impairments.

5.      Any corroboration by third parties of the
         claimant's impairments.

6.      The testimony of vocational experts when required which
         is based upon a proper hypothetical question which sets forth the claimant's
         impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The ALJ's decision whether a person is disabled under the standards set forth above is conclusive upon this Court "if it is supported by substantial evidence on the record as a whole." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." Wiese, 552 F.3d at 730 (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)). When reviewing the

record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision.  Id.  The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001), or it might have "come to a different conclusion." Wiese, 552 F.3d at 730.  Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision." Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000).  See also Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to cite to some medical evidence in support of the RFC. Claimant further contends that the ALJ erred in failing to elicit vocational expert testimony.

A.      Residual Functional Capacity

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to cite to some medical evidence in support of the RFC.

With regard to the ALJ's determination of Claimant's RFC, the undersigned finds that the ALJ properly assessed the medical evidence and Claimant's credibility.  "The ALJ must determine a claimant's RFC based on all of the relevant evidence." Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004).  It is the responsibility of the ALJ to assess a claimant's RFC based on all the evidence, including medical records, the opinions of treating and examining physicians, as well as the claimant's own statements regarding his limitations. McGeorge v. Barnhart, 321 F.3d 766,

768 (8th Cir. 2003); McKinney v. Apfel, 228 F.3d 860 863 (8th Cir. 2000) (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)).  "In analyzing the evidence, it is necessary to draw meaningful inferences and allow reasonable conclusions about the individuals's strengths and weaknesses."  SSR 85-16.  SSR 85-16 further delineates that "consideration should be given to ... the [q]uality of daily activities ... [and the a]bility to sustain activities, interests, and relate to others *over a period of time*" and that the "frequency, appropriateness, and independence of the activities must also be considered."  SSR 85-16.

An ALJ must begin his assessment of a claimant's RFC with an evaluation of the credibility of the claimant and assessing the claimant's credibility is primarily the ALJ's function. See Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003) (finding a claimant's credibility is primarily a matter for the ALJ to decide); Pearsall, 274 F.3d at 1218.  In making a credibility determination, an ALJ may discount subjective complaints if they are inconsistent with the record as a whole.  Holstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  In Polaski, the Eighth Circuit set out factors for an ALJ to consider when determining the credibility of a claimant's subjective complaints.  The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints.  Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000).  "An ALJ must do more than rely on the mere invocation of Polaski to insure safe passage for his or her decision through the course of appellate review."  Harris v. Shalala, 45 F.3d 1190. 1193 (8th Cir. 1995). However, the Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically.  The ALJ's analysis will be accepted as long as the

opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints.  Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).  See also Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).  An ALJ is only required to consider impairments he finds credible and supported by substantial evidence in determining a claimant's RFC.  See McGeorge v. Barnhart, 321 F.3d 766, 769 (8th Cir. 2003) ("The ALJ properly limited his RFC determination to only the impairments and limitations he found to be credible based on his evaluations of the entire record." )

Determination of residual functional capacity is a medical question and at least "some medical evidence 'must support the determination of the claimant's [residual functional capacity] and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) (quoting Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001)).  Further, determination of residual functional capacity is "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).  Similarly, in making a finding of residual functional capacity, an ALJ may consider non-medical evidence, although the residual functional capacity finding must be supported by some medical evidence.  See Lauer, 245 F.3d at 704.

The determination of Claimant's credibility is for the Commissioner, and not the Court, to decide.  Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  The ALJ may not discredit Claimant's complaints of pain solely because they are unsupported by objective medical evidence. O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003); Jones v. Chater, 86 F.3d 823, 826 (8th

Cir. 1996); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted).

Instead, the ALJ must fully consider all of the evidence relating to the subjective complaints,

including the Claimant's work record, the absence of objective medical evidence to support the

complaints, and third party observations including treating and examining doctors as to:

      1.     claimant's daily activities;

      2.     duration, frequency and intensity of the pain;

      3.     precipitating and aggravating factors;

      4.     dosage, effectiveness and side effects of medication;

      5.     functional restrictions.

Ford v. Astrue, 518 F.3d 979, 982 (8th Cir. 2008) (citing Polaski v. Heckler, 739 F.2d 1320,

1322 (8th Cir. 1984)).  The ALJ may disbelieve the claimant's subjective complaints "if there are

inconsistencies in the evidence as a whole."  Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th

Cir. 2004).

       When determining a claimant's complaints of pain, the ALJ may disbelieve such

complaints if there are inconsistencies in the evidence as a whole.  Polaski, 739 F.2d at 1322. The

ALJ must make express credibility determinations detailing the inconsistencies in the record that

support the discrediting of the claimant's subjective complaints.  Singh v. Apfel, 222 F.3d 448,

452 (8th Cir. 2000); see also Johnson v. Secretary of Health and Human Servs., 872 F.2d 810,

813 (8th Cir. 1989).  "An ALJ must do more than rely on the mere invocation of Polaski to insure

safe passage for his or her decision through the course of appellate review."  Harris v. Shalala, 45

F.3d 1190, 1193 (8th Cir. 1995).   Where an ALJ explicitly considers the Polaski factors but then

discredits a claimant's complaints for good reason, his decision should be upheld.   Browning v.

Sullivan, 958 F.2d 817, 821 (8th Cir. 1992).  However, the Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically.  Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1966).  The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints.  Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000); see also Brown, 87 F.3d at 966.  The ALJ's credibility findings are entitled to deference if the findings are supported by multiple valid reasons.  See Goff v. Barnhart, 421 F.3d 785, 791-92 (8th Cir. 2005); Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (if ALJ explicitly discredits claimant and gives good reasons for doing so, court will normally defer to credibility determination).  The undersigned finds that the ALJ's credibility determination is supported by substantial evidence.

In his decision the ALJ thoroughly discussed the conservative medical treatment, the gap in treatment, the lack of medical evidence corroborating Claimant's subjective complaints of functional limitations and pain, poor work history, the ALJ's observations at the hearing, and the medical opinions in the record.  See Gray v. Apfel, 192 F.3d 799, 803-04 (8th Cir. 1999) (ALJ properly discredited claimant's subjective complaints of pain based on discrepancy between complaints and medical evidence, inconsistent statements, lack of pain medications, and extensive daily activities).  The lack of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints.  See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995) (lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994) (the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of

her complaints).  The ALJ noted that although Claimant asserts that she is unable to work due to arthritis, right hand injury, back problems, and panic attacks, the clinical and objective medical findings are inconsistent with an individual experiencing totally debilitating symptomatology.  In support, the ALJ cited to the treatment notes from Dr, Verdine and Dr. Mannis and the limited, conservative medical treatment.  The ALJ then addressed other inconsistencies in the record to support his conclusion that Claimant's complaints were not credible.

The ALJ next noted that the treatment gaps in the medical record undermine Claimant's credibility concerning her allegations of disabling pain and disabling impairments.  Edwards v. Barnhart, 314 F.3d 964, 968 (8th Cir. 2003) (claimant's failure to pursue regular medical treatment detracted from credibility.  Such gaps suggest that Claimant's subjective complaints of disabling pain are not entirely credible.  See Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995) (citing Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir. 1987)) (holding that the "claimant's failure to seek medical treatment for pain" is a legitimate factor for an ALJ to consider in rejecting a claimant's subjective complaints of pain).  "[T]he failure to seek medical treatment for such a long time during a claimed period of disability tends to indicate tolerable pain."  Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995); see Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) (holding that infrequent treatment is a basis for discounting subjective complaints).  After the May 2009 surgery, Claimant did not receive any further treatment for her right hand nor did she report any complaints of pain.  See Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995) ("While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem.").  In this matter, the record does not establish that Claimant did not seek medical treatment because of limited resources.

The ALJ also considered that after Claimant was diagnosed with bipolar 2 disorder on November 19, 2009[3] after reporting problems with her nerves caused by relationship problems and having symptoms of major depressive episode, Dr. Barbin prescribed lamictal and in the follow-up visit, Claimant reported her medication makes her calmer and doing much better and having no side effects.  Dr. Barbin noted Claimant doing well and having an improved mood and continued her medication regimen.  Dr. Barbin in a follow-up visit noted the status of Claimant's bipolar 2 disorder to be controlled, and she is taking medications regularly.  Conditions which can be controlled by treatment are not disabling.  See Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) Additionally, the absence of side effects from medication is a proper factor for the ALJ to consider when determining whether a claimant's complaints of disabling pain are credible.  See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("We [] think that is was reasonable for the ALJ to consider the fact that no medical records during this time period mention [the claimant's] having side effects from any medication.").

Likewise, the ALJ noted that Claimant never sought nor received any form of treatment from a mental health specialist.  See Page v. Astrue, 484 F.3d 1040, 1044 (8th Cir. 2007) (affirming ALJ's determination that mental health issues were not severe where claimant sought very limited treatment).  Indeed, during an evaluation, Claimant denied any history of formal mental health treatment.  The fact that Claimant did not seek aggressive treatment from a mental health professional was a proper consideration.  See Partee v. Astrue, 638 F.3d 860, 864 (8th Cir. 2011) (holding that the failure to seek mental treatment is a relevant consideration when

---

[3]During that treatment, Claimant reported lower back pain starting a month earlier after a fall.

- 21 -

evaluating a claimant's mental impairment); Kirby v. Astrue, 500 F.3d 705, 708-09 (8th Cir.

2007) (affirming ALJ's finding that claimant did not suffer significant impairment due to

psychiatric illness when claimant had never had any formal treatment by psychiatrist, psychologist,

or other mental health professional on a long-term basis); Roberts v. Apfel, 222 F.3d 466, 469

(8th Cir. 2000) (affirming the ALJ's conclusion that mental impairments were not disabling when

there was no evidence "of ongoing counseling of psychiatric treatment or of deterioration of

change in [claimant's] mental capabilities"); Jones v. Callahan, 122 F.3d 1148, 1153 (8th Cir.

1987) (affirming ALJ's finding that claimant's mental impairment was not severe based on, inter

alia, lack of any regular treatment by mental health professional, although claimant "might

experience some difficulties associated with his mental or emotional health.");  Vanlue v. Astrue,

2012 WL 4464797, at *12 (E.D. Mo. Sept. 26, 2012) (affirming the ALJ's finding that depression

was not a severe impairment where the claimant had sought only minimal and conservative

treatment and the claimant never required more aggressive forms of mental health treatment than

medication).[4]

    The ALJ noted that Claimant's work history and earnings record detract from her

credibility regarding the severity of her impairments alleged and her overall motivation to work

---

[4]The ALJ also could have found Claimant's mental impairments to be situational in nature.  Dr. Barbin's treatment notes reflect Claimant reported having problems with her nerves caused by relationship problems and aggravated by conflict or stress at home or work and her husband's release from prison causing her anxiety since she just filed for divorce.  In Gates v. Astrue, 627 F.3d 1080. 1082 (8th Cir. 2010), the Eighth Circuit affirmed the ALJ's finding that a claimant's depression and anxiety were not severe but were situational in nature and improved with a regimen of medication and counseling.  The diagnosis of bipolar 2 disorder was largely based on Claimant's own statements and did not include any opinions as to any corresponding functional limitations.  Id..  See also Holland v. Apfel, 153 F.3d 620, 622 (8th Cir. 1998) (affirming finding that depression was not severe when claimant had been prescribed antidepressant after mother's death, but had no ongoing treatment.

versus motivation for benefits inasmuch as her record documents poor and overall inconsistent earnings.  A poor work history lessens a Claimant's credibility.  Woolf, 3 F.3d at 1214; see also Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) (a poor work history "may indicate a lack of motivation to work, rather than a lack of ability.").  Further, as noted by the ALJ, Claimant's work history is characterized by low earnings and significant breaks in employment. See Fredrickson v. Barnhart, 359 F.3d 972, 976-77 (8th Cir. 2004) (holding that the claimant was properly discredited due, in part, to her sporadic work record, reflecting poor earnings and multiple years with no reported earnings, pointing to potential lack of motivation to work); Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (low earnings and significant breaks in employment cast doubt on complaints of disabling symptoms).  As noted by the Eighth Circuit, however, "all disability claimants are financially motivated to some extent."  Ramirez v. Barnhart, 292 F.3d 576, 581-82 n.4 (8th Cir. 2002).  As such, financial motivation should not be dispositive in assessing a claimant's credibility.  Id.  Instead, "a claimant's financial motivation may contribute to an adverse credibility determination when other factors cast doubt upon the claimant's credibility."  Id.; see also Carey v. Astrue, 2012 WL 1033341, at *28 (E.D. Mo. March 27, 2012) (holding that because other factors upon which the ALJ relied to cast doubt upon Plaintiff's credibility were not supported by the record, Plaintiff's possible financial motivation in seeking benefits could not serve as a basis upon which to discredit his subjective complaints).

The ALJ considered at the hearing Claimant exhibited no evidence of pain or discomfort, and "she had no apparent difficulty understanding or responding to questions posed to her."  (Tr. 22).  "[An] ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations."  Johnson v. Apfel, 240 F.3d 1145, 1148

(8th Cir. 2001).  See also Smith v. Shalala, 987 F.2d 1371, 1375 (8th Cir. 1993) (observation by the ALJ that claimant had not appeared uncomfortable at the hearing was properly considered as detracting from claimant's credibility).  The ALJ's observations of a claimant's appearance and demeanor during the hearing is consideration.  Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) (holding that an ALJ "is in the best position" to assess credibility because he is able to observe a claimant during his testimony); Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations); Jones v. Callahan, 122 F.3d 1148, 1151 (8th Cir. 1997) ("When an individual's subjective complaints of pain are not fully supported by the medical evidence in the record, the ALJ may not, based solely on his personal observations, reject the complaints as incredible.").  Here, the ALJ combined his review of the record as a whole with his personal observations.  As such, the Court finds that the ALJ's decision in this regard is based on substantial evidence.  The ALJ further found Claimant's history of probation for the sale of a controlled substance detracted from the overall credibility of her allegations.

Finally, also detracting from Claimant's credibility were the previous, multiple applications filed by Claimant suggesting an element of secondary gain in her conduct as noted by the ALJ. The ALJ opined that Claimant "appears to be more motivated to obtain benefits than to engage in work activity."  (Tr. 22).  "[A] claimant's financial motivation may contribute to an adverse credibility determination when other factors cast doubt upon the claimant's credibility."  Ramirez, 292 F.3d at 581-82 n.4.  See also Gaddis v. Chater, 76 F.3d 893, 895-96 (8th Cir. 1996) (finding that ALJ properly discounted credibility of claimant who was financially motivated to seek disability benefits).

- 24 -

In his decision, the ALJ identified the <u>Polaski</u> factors and set out numerous inconsistencies in the record to support his conclusion that Claimant's complaints were not credible.  Specifically, the ALJ noted Claimant's complaints and treatment to continue through May, 2009, but the record thereafter shows Claimant did not seek medical treatment for right hand complaints or symptoms nor did she report such complaints of symptoms to any treating doctor after that time. <u>See</u> <u>Wilson v. Chater</u>, 76 F.3d 238, 241 (8th Cir. 1996) (failure to seek medical treatment for symptoms inconsistent with subjective complaints of pain); <u>see</u> <u>also</u> <u>Spradling v. Chater</u>, 126 F.3d 1072, 1075 (8th Cir. 1997) (failure to seek more aggressive treatment and lack of continuous treatment inconsistent with complaints of disabling pain).  The ALJ noted that after Dr. Verdine performed surgical removal of the metacarpal hardware, Claimant sought no follow-up treatment with Dr. Verdine.  Likewise, although Dr. Mannis during a consultative examination on August 3, 2009 opined that Claimant would have some restriction in her ability to use her right hand for fine maneuvering on a repetitive basis and gripping on a regular basis, this examination was three months after the surgery in May 2009.   Thereafter, on November 19, 2009, Dr. Barbin started treating Claimant.  A review of Dr. Barbin's treatment notes show that Claimant never made any complaints pertaining to her right hand, and Dr. Barbin found her bipolar 2 disorder to be controlled by medications.  The ALJ noted that Claimant's recent treatment had been routine and conservative, and she did not receive any further treatment for her right hand.  The ALJ properly found that the limitations were not permanent restrictions.

Specifically, the ALJ noted that no treating physician in any treatment notes found Claimant to be disabled or unable to work or imposed mental limitations on Claimant's capacity for work during the relevant time period.  <u>See</u> <u>Young v. Apfel</u>, 221 F.3d 1065, 1069 (8th Cir.

- 25 -

2000) (significant that no examining physician submitted medical conclusion that claimant is

disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508

(8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective

complaints).  The lack of objective medical basis to support Claimant's subjective descriptions is

an important factor the ALJ should consider when evaluating those complaints.  See Renstrom v.

Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012); Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir.

1995) (lack of objective findings to support pain is strong evidence of lack of a severe

impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994) (the ALJ was entitled to find

that the absence of an objective medical basis to support claimant's subjective complaints was an

important factor in evaluating the credibility of her testimony and of her complaints).  In addition,

the ALJ noted that no physician had ever made any medically necessary restrictions, restrictions

on her daily activities, or functional or physical limitations.  Likewise, the medical evidence is

devoid of any evidence showing that Claimant's condition has deteriorated or required aggressive

medical treatment.  Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failure to seek

aggressive medical care is not suggestive of disabling pain); Walker v. Shalala, 993 F.2d 630,

631-32 (8th Cir. 1993) (lack of ongoing treatment is inconsistent with complaints of disabling

condition).

      After engaging in a proper credibility analysis, the ALJ incorporated into Claimant's RFC

those impairments and restrictions found to be credible.  See McGeorge v. Barnhart, 321 F.3d

766, 769 (8th Cir. 2003) (the ALJ "properly limited his RFC determination to only the

impairments and limitations he found credible based on his evaluation of the entire record.").  The

ALJ determined that the medical evidence supported a finding that Claimant could perform a full

range of light work.

As demonstrated above, a review of the ALJ's decision shows the ALJ not to have denied relief solely on the lack of objective medical evidence to support his finding that Claimant is not disabled.  Instead, the ALJ considered all the evidence relating to Claimant's subjective complaints, including the various factors as required by Polaski, and determined Claimant's allegations not to be credible.  Although the ALJ did not explicitly discuss each Polaski factor in making his credibility determination, a reading of the decision in its entirety shows the ALJ to have acknowledged and considered the factors before discounting Claimant's subjective complaints.  See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).  Inasmuch as the ALJ expressly considered Claimant's credibility and noted numerous inconsistencies in the record as a whole, and the ALJ's determination is supported by substantial evidence, such determination should not be disturbed by this Court.  Id.; Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996).  Because the ALJ gave multiple valid reasons for finding Claimant's subjective complaints not entirely credible, the undersigned defers to the ALJ's credibility findings.  See Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (deference given to ALJ's credibility determination when it is supported by good reasons and substantial evidence); Guilliams v. Barnhart, 393 F.3d 798, 801(8th Cir. 2005).

The undersigned finds that the ALJ considered Claimant's subjective complaints on the basis of the entire record before him and set out the inconsistencies detracting from Claimant's credibility.  The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole.  Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  The ALJ pointed out inconsistencies in the record that tended to militate against the Claimant's credibility.  See

Guilliams, 393 F.3d at 801 (deference to ALJ's credibility determination is warranted if it is

supported by good reasons and substantial evidence).  Those included Claimant's conservative

medical treatment, the lack of medical evidence corroborating Claimant's subjective complaints of

functional limitations and pain, the gap in treatment, poor work history, the ALJ's observations at

the hearing, and the medical opinions in the record poor work record.  The ALJ's credibility

determination is supported by substantial evidence on the record as a whole, and thus the Court is

bound by the ALJ's determination.  See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006);

Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992).  Accordingly, the ALJ did not err in

discrediting Claimant's subjective complaints.  See Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir.

2001) (affirming the ALJ's decision that claimant's complaints of pain were not fully credible

based on findings, inter alia, that claimant's treatment was not consistent with amount of pain

described at hearing, that level of pain described by claimant varied among her medical records

with different physicians, and that time between doctor's visits was not indicative of severe pain).

The undersigned finds that substantial evidence supports the ALJ's finding that the medical

records do not support the extent of Claimant's subjective complaints of pain.  See Flynn v.

Astrue, 513 F.3d 788, 792 (8th Cir. 2008) (standard of review; substantial evidence is enough that

reasonable mind might accept it as adequate to support decision).

 The ALJ's determination of Claimant's RFC is supported by substantial evidence in the

record.  Likewise, the ALJ noted several inconsistencies within the record, and he pointed out the

lack of supporting objective medical evidence.  The ALJ opined that the medical record does not

show that any physician imposed any functional restrictions of Claimant or found her to be totally

disabled.  The ALJ found Claimant's complaints of pain not to be credible in light of the paucity of

abnormal findings and limited treatment.  Indeed, the ALJ highlighted the lack of documentation

in the treatment records of restrictions upon Claimant's functional capacity ever placed on

Claimant.  The ALJ specifically noted that no doctor had placed any specific long-term limitations

on Claimant's abilities to do other basic exertional activities.  The ALJ also properly considered

the Polaski factors in concluding that Claimant's subjective complaints of pain and discomfort are

not supported by the objective medical evidence inasmuch as Claimant failed to receive consistent

treatment for her pain.  The ALJ listed facts from Claimant's hearing testimony regarding the

Polaski factors and the medical record that reflected upon Claimant's ability to perform a full

range of light work such as the paucity of abnormal findings and limited treatment and

conservative medical treatment.  Further, the ALJ pointed out other inconsistencies in the record

that tended to militate against Claimant's credibility.  See Samons v. Astrue, 497 F.3d 813, 818

(8th Cir. 2007) (finding that substantial evidence supported the ALJ's decision where there were

too many inconsistencies in the case).  Those included Claimant's demeanor at the hearing, the

absence of objective medical evidence of deterioration, the absence of any doctor finding Claimant

disabled or imposing any functional limitations, her conservative medical treatment, gap in

treatment, poor earnings record, and history of probation.  Based on the ALJ's analysis of the

medical evidence and Claimant's credibility, the undersigned finds that there exists in the record

substantial evidence to support a finding that Claimant retains an RFC to perform a full range of

light work.  The ALJ's determination does not contradict any of the medical evidence, and nothing

else in the record detracts from his decision.  Based on the ALJ's analysis of the medical evidence

and Claimant's credibility, the undersigned finds that there exists in the record substantial evidence

to support a finding that Claimant retains an RFC to perform a full range of light work.  Thus, the

undersigned finds that substantial evidence supports the ALJ's finding that Claimant has the residual functional capacity to perform a full range of  light  work.

The substantial evidence on the record as a whole supports the ALJ's decision.  Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome.  Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992)).

B.      Lack of Vocational Expert Testimony

Claimant further contends that the ALJ's decision is not supported by substantial evidence because, the ALJ was required to elicit vocational expert testimony.  Claimant further argues that she has a significant nonexertional impairment that precluded the ALJ from relying upon the Medical-Vocational Guidelines to assess her capability for performing work that is available in the national economy.  This claim is without merit.

Generally, when a claimant has a nonexertional impairment, such as pain, the ALJ must obtain testimony from a vocational expert in order to satisfy the Commissioner's burden at step five of the sequential evaluation process.  Hall v. Chater, 62 F.3d 220, 224 (8th Cir. 1995). Where, however as here, the ALJ properly discredits the claimant's complaint of a nonexertional impairment, the ALJ is not required to consult with a vocational expert and may properly rely on the vocational guidelines at step five.  Id.; Naber v. Shalala, 22 F.3d 186, 189 (8th Cir. 1994).  As outlined above, the ALJ sufficiently discredited Claimant's complaints of hand pain and mental impairments.  Indeed, the ALJ noted that after August 3, 2009 the medical record is devoid of treatment for right hand complaints or symptoms Claimant worked for years when she was obese. Thus, the ALJ committed no error in determining claimant not to be disabled without eliciting

- 30 -

vocational expert testimony.

As outlined above, the ALJ sufficiently discredited Claimant's subjective complaints of right hand pain and mental impairments. "When a claimant's subjective complaints of pain are explicitly discredited for legally sufficient reasons articulated by the ALJ, the Secretary's burden [at the fifth step] may be met by use of the [Medical-Vocational Guidelines]." Naber, 22 F.3d at 189-90 (quotations omitted). Thus, the ALJ committed no error by using the Medical-Vocational Guidelines to determine whether Claimant was disabled.

As discussed, the ALJ properly determined that Claimant retains the residual functional capacity to perform the full range of light work where she would be expected to occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; sit six hours in an eight-hour workday; stand/walk six hours in an eight-hour workday; occasionally stoop and crouch; and push/pull consistent with her lifting limitations.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that  the final decision of

the Commissioner denying social security benefits be **AFFIRMED**.

Judgment shall be entered accordingly.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this  17th   day of September, 2013.